THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAUL CLEM, Defendant-Appellant.

Second District   Nos. 77-493, 77-494 cons.

Opinion filed May 24, 1979.

Mary Robinson and John Lanahan, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Martin Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following plea negotiations, defendant, Paul Clem, pleaded guilty to a charge of burglary. Under the terms of the negotiated plea he was then sentenced to three years' probation, the first year to be served at a work-release center, with no credit for time served, and defendant was to pay the court costs of $70. Thereafter, the State filed a motion to revoke defendant's probation as hereinafter set forth. Defendant then filed a motion to withdraw his guilty plea; the motion was denied. Following a hearing, defendant's probation was revoked and he was sentenced to 3½ to 10½ years' imprisonment on the burglary charge. The judgment and sentence order specified that defendant not be given credit for time served while on probation or since the filing of the petition to revoke. Defendant appeals. Our disposition of the issues raised by defendant on this appeal requires a detailed discussion of the facts.

Defendant was arraigned on the charge of burglary on May 12, 1977; at that time he was represented by an attorney from the Lake County public defender's office. The case was set for a pretrial on May 19, 1977. On May 19, in the presence of the defendant and his attorney, the assistant state's attorney indicated to the trial court that he had discussed a disposition of the case with the defendant's attorney who had conveyed the discussions to defendant, and that both sides were now prepared to present these negotiations to the trial court. The negotiations contemplated that defendant would enter a plea of guilty to the burglary charge and would be placed on three years' probation, given credit for time served in the county jail, which was approximately 90 days, and he would be sent to a halfway house for a six months period; defendant would also pay the court costs. The trial court tentatively accepted the plea agreement subject to the information contained in the presentencing report.

The trial court then ascertained from defendant that defendant understood that by entering into a negotiated plea, defendant was waiving his right to a jury trial, confrontation of the witnesses, presumption of innocence until proved guilty, his right not to testify against himself and his right to a bench trial; and that knowing and understanding that he was giving up all these rights, that defendant still wished to enter into this plea agreement. Defendant was then advised as

to the nature of the charge against him, the possible penalties and parole period, and he indicated that he understood them. Defendant was then sworn as a witness and under questioning by his counsel gave the factual basis for the charge of burglary; the assistant state's attorney indicated that the State's testimony would show exactly what the defendant had testified to. The trial court stated that it had heard more than a sufficient basis for acceptance of the plea; it would conditionally accept the plea and would refer the matter to the probation department for presentence investigation and report, and continued the case until June 9, 1977.

On June 9, in the presence of defendant and his attorney and the assistant state's attorney, the trial court stated it was not "tempted" to accept the proposed negotiations, based on defendant's previous record, and therefore continued the case until June 16, 1977. On June 16, in the presence of the defendant and his attorney, the assistant state's attorney presented to the trial court alternative negotiations under which defendant would plead guilty to burglary and the State would recommend a period of three years' probation, a condition of which the first nine months would be spent on a work-release program, and defendant would receive credit for time served in the county jail. The trial court continued the case until 1:30 p.m. that afternoon for further consideration. At the 1:30 p.m. hearing, again in the presence of defendant and his attorney, the assistant state's attorney presented to the trial court a modification of the plea agreement under which the State would recommend a period of three years' probation, a condition of which defendant would spend the first year on the work-release program at Camp Logan; further, defendant would receive no consideration for time already served to be applied against that and he would pay the court costs. The case was continued until June 20 to determine if defendant would be accepted in the work-release program.

On June 20, it was ascertained that there was an opening in the work-release program. Thereupon, in the presence of defendant and his attorney, the assistant state's attorney tendered to the trial court the June 16 negotiations, and the trial court accepted the agreement. The trial court then admonished defendant as to the crime charged and the possible penalties. The trial court then ascertained that defendant was not entering into the negotiated plea due to threats and that he was doing so voluntarily and of his own free will. Defense counsel moved to withdraw the plea of not guilty and entered a plea of guilty to the charge. The trial court entered judgment on the finding of guilty and sentenced defendant in accordance with the plea agreement. The trial court then informed defendant of his right to file an appeal from the sentence and to file a motion to withdraw his guilty plea, and that if he were without funds an attorney and a free transcript would be provided for him.

On July 14, 1977, the State filed a petition to revoke defendant's probation. The petition alleged that defendant had violated his probation by committing the offense of theft over $150 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)) and by committing the offense of escape (Ill. Rev. Stat. 1977, ch. 38, par. 31—6(a)). On July 19, 1977, defendant filed a motion to withdraw his guilty plea, alleging *inter alia* that he was not adequately or properly represented by counsel and that at the time he entered into the negotiated plea he did not understand the negotiations or their ramifications; defendant's motion also requested that private counsel be appointed to represent him. At the time of the filing of the motion, another assistant public defender represented defendant and indicated to the trial court that she didn't see how the public defender's office could represent defendant due to the allegations of inadequate representation. The trial court indicated that there would be a hearing on the motion, and that if the trial court found merit to the foregoing allegation, the trial court would act.

On August 4, 1977, yet another attorney from the public defender's office argued defendant's motion to withdraw his guilty plea. Defense counsel argued that there was nothing in the record to indicate that defendant understood what sentence he would receive when all the negotiations were complete; what work release was all about; or that defendant knew what would happen to him if he violated the terms and conditions of work release. The trial court indicated that it had reviewed the record and found that defendant had indicated he understood the matter when the court inquired. Accordingly, the trial court denied defendant's motion to withdraw his guilty plea, and at defense counsel's request ordered the clerk to file a notice of appeal.

Following a hearing on August 11, defendant's probation was revoked, and defendant was sentenced to 3½ to 10½ years' imprisonment, with no credit for time served while on probation or since the filing of the petition to revoke. A notice of appeal was timely filed from these proceedings as well.

Defendant contends that he was erroneously denied leave to withdraw his guilty plea, since there was no showing that he understood the terms of the plea negotiations. He argues specifically that Supreme Court Rule 402(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 402(b)) requires in pertinent part that, "* * * The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, * * *." It is clear from the record that this requirement was not followed here.

■■ ■ "The decision of whether to allow the withdrawal of a plea of guilty, once entered, is within the sound discretion of the trial court. [Citations.] Permission to withdraw a plea of guilty should be granted not as a

matter of right but rather if necessary to correct a manifest injustice based on the facts of the case. [Citation.] The defendant bears the burden of proof. [Citation.]

The trial court's determination will not be disturbed unless the facts show that the plea of guilty was entered under a misapprehension of law or fact, that the defendant has a defense worthy of consideration or that there is a doubt of the guilt of the accused and the ends of justice would better be served by a trial. [Citation.]" *People v. Linden* (1975), 27 Ill. App. 3d 45, 48, 325 N.E.2d 809, 811.

It is well settled that Supreme Court Rule 402 requires only substantial, not literal compliance with its provisions. We note also that in *People v. Krantz* (1974), 58 Ill. 2d 187, 317 N.E.2d 559, our supreme court held that the entire record may be considered in determining whether or not there is an understanding by the accused of these provisions. It is clear from the facts related above that at the June 20, 1977, hearing, that the trial court did not question the defendant and confirm the final terms of the plea agreement, in the literal language of the Rule. However, it is equally clear that defendant was present on all occasions when plea negotiations were presented to the trial court; he was present with his attorney at the June 20 hearing in which the final negotiations were presented for the trial court's approval; that the defendant indicated to the trial court that he was entering into the plea agreement voluntarily and of his own free will and did not indicate that he either did not understand the agreement or was confused as to which plea agreement was before the court; and finally, when the trial court recited the terms of the final plea agreement in open court, again defendant failed to indicate that he was confused or did not understand the plea agreement he was entering into.

■■ We are of the opinion that under the facts of the entire record before us, there was substantial compliance with Supreme Court Rule 402(b), and that defendant was fully aware of and understood the terms of the plea agreement he entered into. Therefore as the entire record does not show that defendant's guilty plea was entered as a result of a misapprehension of the law or fact, nor does defendant raise a defense or a doubt as to his guilt, and as there is no manifest injustice shown by these facts, we conclude that the trial court did not abuse its discretion in denying defendant's motion to vacate his guilty plea.

In his motion to withdraw his guilty plea, defendant alleged that he had not been adequately represented by his attorney, an assistant public defender, on his guilty plea, and therefore he contends on appeal that the trial court should have appointed counsel other than from the Lake County public defender's office to represent him on his motion to withdraw his guilty plea.

In *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E. 2d 169, our supreme court, in the context of a post-conviction hearing, held that where a defendant is represented by a member of the public defender's office on a petition which alleges incompetent representation by another assistant public defender *from the same office*, the public defender's office is clearly confronted with a conflict of interest since on the one hand it is inclined to protect its own reputation and on the other it must act as an advocate for the defendant to prove the truth of these charges. Such a conflict of interest situation is to be avoided. (See also *People v. Terry* (1970), 46 Ill. 2d 75, 262 N.E.2d 923.) In *People v. Norris* (1977), 46 Ill. App. 3d 536, 361 N.E.2d 105, the court applied the rationale of *Smith* and *Terry* in the context of a guilty plea and found it error to deny a defendant's motion to withdraw his guilty plea in view of such a conflict of interest.

In *People v. Freeman* (1977), 55 Ill. App. 3d 1000, 371 N.E.2d 863, defendant contended, *inter alia*, that the trial court erred by failing to appoint counsel, other than the public defender's office, to represent him on the motion to withdraw his guilty plea, since he alleged therein that the assistant public defender who represented him prior to and during the plea proceeding, had coerced him into pleading guilty. The court, relying on *Smith* and *Terry*, held that it was reversible error to appoint an assistant public defender to represent a defendant on a motion to withdraw a guilty plea when the motion contains an allegation of ineffective representation by another member of the same public defender's office which represented defendant at the time the guilty plea was entered. Nor was it necessary for the defendant to demonstrate factual prejudice; such a per se conflict of interest demands reversal. See *People v. Norris.*

In its opinion the *Freeman* court distinguished the case of *People v. Taylor* (1977), 48 Ill. App. 3d 925, 363 N.E.2d 643. In *Taylor*, defendant, on appeal, argued that he was denied the effective assistance of counsel on the motion to vacate his guilty plea, where one of the grounds of the motion was that he had entered the plea in reliance on his attorney's advice that he felt defendant stood an excellent chance of receiving probation. Instead, however, he received a sentence of one to three years, and thereafter moved to withdraw his plea. The court, while recognizing the conflict of interest rule set down by *Smith* and *Terry*, held that it did not need to decide the applicability of this rule to the matter before it. The court found on the facts before it, representation by the same counsel was harmless error because the defendant's mere belief or hope for probation did not entitle him to withdraw his guilty plea; and thus his representation by the same attorney during both the guilty plea and the

withdrawal of the guilty plea proceedings could not have influenced the result.

The *Freeman* court held that the allegation of inadequate representation made by the defendant in *Taylor* did not approach the claim of coercion made by the defendant before them; in *Freeman*, the defendant's claim of an involuntary plea was made *prior to* the imposition of sentence and related to counsel's assessment of his chances at trial and his allegedly defeatist attitude with regard to going to trial. Therefore, *Taylor* was distinguishable on the facts. Further, the *Freeman* court found the application of the harmless error rule questionable in light of holdings by the Illinois supreme court that a per se conflict of interest requiring reversal will be found without the need to establish actual prejudice, whenever there exists the possibility of a conflict arising out of the defense attorney's commitment to others which might deter counsel in the pursuit of a vigorous representation of the defendant. *Freeman*, 55 Ill. App. 3d 1000, 1007, 371 N.E.2d 863, 869.

At the time of defendant's motion to withdraw his guilty plea in the case before us, defendant did nothing more than make an assertion that his counsel in the guilty plea proceedings was incompetent. This bare assertion falls far short of the claims made by the defendant in *Freeman* or even the claim made by the defendant in *Taylor*. While it is true that actual prejudice need not be demonstrated, such claims must at least be substantiated in some way by factual allegations. Therefore, we are of the opinion that it was not error in this situation to deny defendant different counsel on his motion to withdraw his guilty plea.

Finally, defendant contends that he should have been given credit on his sentence for time he spent on periodic imprisonment, and for the time he spent in jail awaiting the hearing on the petition to revoke his probation. The State concedes that defendant is entitled to credit for the time spent on periodic imprisonment but not for the time spent awaiting the probation revocation hearing. See Ill. Rev. Stat. 1977, ch. 38, par. 1005—7—2(c).

Section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—7(b)) provides in pertinent part,

> "(b) The offender shall be given credit on the maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed."

The State relies on *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766, in support of its position; however, the State has misapprehended the decision in that case. In *Vahle*, defendant was arrested for burglary on November 25, 1975, and released December 1 after

posting bond. When it was learned that defendant was on probation in 73 CF 120 at the time of the burglary, he was rearrested on January 10, 1976, for violating his probation. Following a probation revocation hearing on April 26, 1976, defendant's probation in 73 CF 120 was revoked, and he was sentenced to one to three years' imprisonment. Thereafter, on June 15, 1976, defendant was tried on the burglary charge, found guilty and sentenced to 1½ to five years' imprisonment to be served concurrently with the one to three years in 73 CF 120. On appeal, defendant contended that he was entitled to credit on his sentence for the time he spent in custody between January and May of 1976 after being reincarcerated pending the hearing on the petition for revocation of his probation. The court held that defendant's incarceration from January to May, 1976, was the result of the offense he was convicted of in 73 CF 120 and was receiving proper credit on the sentence in that case for the time he spent in custody prior to the revocation of probation in that case. The trial court agreed with the State that defendant was not entitled to credit on the sentence on the burglary charge for his incarceration from January to May, 1976, because that incarceration was not the result of the burglary charge as required by section 5—8—7(b).

■ It is clear, however, that in the case before us, the time defendant spent in custody awaiting his probation revocation hearing did result from the burglary charge for which initially defendant had received probation and upon revocation of the probation he was ultimately sentenced to 3½ to 10½ years' imprisonment. Therefore, defendant is entitled to have this time as well as the time spent on periodic imprisonment credited against his sentence. See *People v. Hudson* (1975), 34 Ill. App. 3d 94, 339 N.E.2d 482; *People v. Fleming* (1974), 23 Ill. App. 3d 221, 318 N.E.2d 518.

Therefore we affirm the judgment of the trial court and remand this case to the trial court with directions to credit defendant's sentence with the time defendant served on periodic imprisonment and the time served awaiting the hearing on the revocation of his probation.

*Judgment affirmed and remanded with directions.*

SEIDENFELD and RECHENMACHER, JJ., concur.